FILED
CLERK
10/21/2026
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

KERRI LECHNER
*individually and on behalf*
*of those individuals similarly situated,*

*Plaintiff,*

-against-

THE OPPORTUNITY PRE-SCHOOL,
LINDA FISCHER, *and*
BARBARA DANIELS,

*Defendants.*
-----------------------------------------------------------------X

**REPORT AND**
**<u>RECOMMENDATION</u>**

2:24-CV-00540 (DG) (JMW)

**A P P E A R A N C E S:**

Anthony Thomas Masciana
Christopher Keith Collotta
Ryan M Eden
Saul D. Zabell
**Zabell & Collotta, P.C.**
1 Corporate Drive, Suite 103
Bohemia, NY 11716
*Attorneys for Plaintiff*

Kyle Pulis
Scott M. Mishkin
**Scott Michael Mishkin, PC**
1 Suffolk Square, Suite 240
Islandia, NY 11749
*Attorney for Defendants*

**WICKS**, Magistrate Judge:

Plaintiff Kerri Lechner ("Plaintiff") brings this action against her employer, Defendant The Opportunity Pre-School as well as some of its officers (collectively, "Defendants") under the

Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") for, *inter alia*, failing to pay Plaintiff in January 2024 and then retaliating against her when she inquired about her missed paycheck(s). Before the Court is Defendants' partial motion to dismiss four out of six claims. (ECF No. 36.) Oral argument was held on June 9, 2026. For the reasons stated below, the undersigned respectfully recommends to the Hon. Diane Gujarati that the motion to dismiss be **GRANTED** in part and **DENIED** in part.

## FACTUAL BACKGROUND

The following allegations are drawn from the Complaint and assumed true only for purposes of this motion.

Defendants operate a pre-school. (ECF No. 31, ¶ 34.) Plaintiff was hired by Defendants in or around November 2022 as a teaching assistant, in which capacity she worked at least until the filing of the Amended Complaint in December 2025. (*Id.*, ¶ 34.) In or around December 30, 2023, Defendants stopped paying Plaintiff. (*Id.*, ¶ 40.) Plaintiff inquired as to the status of her pay, and claims that "her requests were met with increasingly hostile responses." (*Id.*, ¶ 41.)

On January 22, 2024, Plaintiff complained about not having been paid. (*Id.*, ¶ 42.) That same day, Plaintiff's son was removed from Defendants' pre-school, and Plaintiff maintains that this was done "in retaliation for her complaints[.]" (*Id.*, ¶ 43.) The removal of Plaintiff's son caused Plaintiff to have to miss work in order to care for him, as well as hiring caretakers to watch him when she could not take any more days off. (*Id.*, ¶ 44.) On March 18, 2024, Plaintiff's son was enrolled in Defendants' pre-school special education program. (*Id.*, ¶ 46.)

The Amended Complaint alleges other forms of retaliation as well. At some point (the Amended Complaint does not specify when, though the implication is that it was after the events described above), Defendants demoted Plaintiff from "part-time" to "per-diem" employment

status. (*Id.*, ¶ 50.) This demotion caused Plaintiff to lose benefits—for instance, as a per-diem employee she is not entitled to holiday benefits—despite having the same job duties and scheduled shift. (*Id.*, ¶¶ 51–52.) As far as Plaintiff is aware, she is the only individual whom Defendants demoted from part-time to per-diem during the relevant time period. (*Id.*, ¶ 53.) Additionally, Plaintiff believes that every employee besides her was given a bonus check in or around August 2025, whereas Plaintiff was "singled out" and told that she would not receive a bonus. (*Id.*, ¶¶ 54–55.) Plaintiff made "numerous" complaints asking why she would not receive a bonus; only after filing a complaint did she finally receive one in September 2025. (*Id.*, ¶¶ 56–57.)

Finally, the Amended Complaint states that Defendants failed to "post notices explaining wage and hour requirements in conspicuous locations" as required by the FLSA and NYLL, or to "provide her with written notice of h[er] wage rate" as required by the New York State Wage Theft Prevention Act. (*Id.*, ¶¶ 64–65.)[1]

The Amended Complaint asserts six causes of action:

1. Failure to pay minimum wage under the FLSA;
2. Failure to pay minimum wage under the NYLL;
3. "Frequency of Pay" under both FLSA and NYLL;
4. Failure to provide a wage notice under the New York State Wage Theft Prevention Act;
5. Failure to maintain records under NYLL; and
6. Retaliation under FLSA and NYLL.

[1] The Amended Complaint also alleges that Plaintiff is periodically required to attend meetings which can extend beyond normal working hours, yet Plaintiff is not compensated for these extra hours. (*Id.*, ¶¶ 60–63.) This allegation relates only to Plaintiff's first and second claims for relief, which are not the subject of this motion.

Defendants move to dismiss the latter four claims.

## PROCEDURAL HISTORY

The initial Complaint was filed on January 25, 2024 (ECF No. 1), three days after Plaintiff's son was allegedly removed from pre-school. Defendants filed their Answer on April 5, 2024. (ECF No. 14.) The parties engaged in mediation on October 23, 2025, but were unable to reach a settlement. (*See* ECF No. 29.) On November 4, 2025, Plaintiff moved to amend the Complaint to add class allegations, additional claims, and details of Defendants' ongoing alleged retaliation since the filing of the initial Complaint. (ECF No. 28.) The Court granted Plaintiff's motion, and she filed the operative Amended Complaint on December 9, 2025. (ECF No. 31.)

On January 7, 2026, Defendants filed a letter motion seeking a pre-motion conference on their anticipated motion to dismiss. (ECF No. 32.) Judge Gujarati referred the motion for a pre-motion conference to the undersigned (*see* Order Referring Motion dated January 21, 2026), and the Court entered a briefing schedule (*see* Electronic Minute Order dated February 26, 2026). The parties filed the fully briefed motion on May 15, 2026. (ECF Nos. 34–36.) Judge Gujarati referred the motion to dismiss for a report and recommendation. (Order Referring Motion dated May 19, 2026.)

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also CompassCare v. Hochul*, 125

F.4th 49, 56-57 (2d Cir. 2025) (quoting *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014) ("a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.")).

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Annabi v. New York Univ.*, No. 24-CV-2601, 2025 WL 1066083, at *1 (2d Cir. Apr. 9, 2025) (quoting *Iqbal*, 556 U.S. at 678). To that end, complaints are properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When considering a motion to dismiss under 12(b)(6), the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, this tenet does not apply to legal conclusions or "threadbare recitals of a cause of action's elements." *Iqbal*, 556 U.S. at 663. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. More is required. Put differently, "while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions. . . . Factual allegations must be enough to raise a right to relief above the speculative level. To survive dismissal, a complaint must provide enough facts to state a claim to relief that is plausible on its face." *Go New York Tours Inc. v. Gray Line New York Tours, Inc.*, No. 24-cv-2392, 2025 WL 947083, at *2 (2d Cir. Mar. 27, 2025) (quoting *Mayor & City Council of Baltimore v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013)).

## DISCUSSION

### I. Third Claim for Relief: Frequency of Pay Under FLSA and NYLL

The Third Claim for Relief states that, pursuant to Section 191(d) of the NYLL, "Plaintiff was entitled to be compensated in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance[.]" (ECF No. 31, 85.) It further states that, pursuant to the FLSA, Defendants were required to pay Plaintiff on her "established scheduled paydays." (*Id.*, ¶ 86.)

In her opposition to Defendants' motion to dismiss, Plaintiff clarifies that this is not a claim about frequency of pay *per se*. "Plaintiff's claim is not that the payment schedule itself violated the FLSA." (ECF No. 35 at 4.) Rather, the issue is that Defendants failed to make *any* payments—including "on the already-established pay date"—"resulting in the complete non-payment of wages" for several weeks. (*Id.*) Plaintiff maintains that the FLSA and NYLL both require "prompt payment once a regular payday has been established." (*Id.*)

Plaintiff's argument is less than clear: nowhere does the Amended Complaint allege that a regular payday was established. That said, section 191 of the NYLL, titled "Frequency of payments," provides that "[e]very employer shall pay wages in accordance with the following provisions[,]" and it proceeds to delineate rules for manual workers, railroad workers, commission salespersons, and "[c]lerical and other worker[s]." NYLL § 191. That fourth category—which, by default, covers teaching assistants such as Plaintiff[2]—requires payment "in accordance with the agreed terms of employment, *but not less frequently than semi-monthly*, on

[2] In their opening brief, Defendants devote a number of pages to demonstrating that Plaintiff is not a "manual" worker under NYLL § 191(a). (ECF No. 34 at 3–5.) In her opposition brief, Plaintiff clarifies that this point is not in dispute; Plaintiff concedes she is not a manual worker. (ECF No. 35 at 4–6.)

regular pay days designated in advance by the employer." NYLL § 191(d) (emphasis added). Given the allegations that Defendants failed to pay Plaintiff for a span of about a month, the Amended Complaint plausibly states a violation of the plain terms of this statute. *See Albim v. 1656 Wireless Inc.*, No. 23 CV 1732 (DG)(RML), 2025 WL 2791384, at *7 (E.D.N.Y. Sept. 8, 2025) (finding defendants violated NYLL § 191(d) where they failed to pay clerical worker "at least semi-monthly for his last three weeks of employment").

In the alternative, Defendants move to stay (this claim) on the grounds that courts are divided as to whether NYLL § 191 provides a private cause of action.[3] That said, "[a]lmost every court in this Circuit . . . has predicted that the Court of Appeals would rule that NYLL § 198 conveys a private right of action for violations of NYLL § 191." *Pritchard v. H.E.S.C. Company, LLC*, No. 2:25-CV-4285-ST, 2026 WL 2935525, at *3 (E.D.N.Y. Sept. 30, 2026) (quoting *Camillo v. Khim's Millennium Mkt., Inc.*, No. 22-CV-7846 (AMD)(PK), 2025 WL 951265, at *11 (E.D.N.Y. Mar. 13, 2025)); *see also, e.g.*, *Khan v. Meep New York, Inc.*, No. 24-CV-06929 (RER) (RML), 2026 WL 861170, at *4 (E.D.N.Y. Mar. 30, 2026); *Turenne v. Wireless Vision Holdings, LLC*, No. 23-CV-3651 (EK)(JAM), 2025 WL 2733227, at *4 (E.D.N.Y. Sept. 25, 2025) (concluding that "late payments in violation of Section 191 are underpayments within the meaning of Section 198, and that those late payments are therefore

[3] The ambiguity arises because "New York's intermediate appeals courts are split on whether there is a private right of action under NYLL § 191[.]" *Pritchard v. H.E.S.C. Company, LLC*, No. 2:25-CV-4285-ST, 2026 WL 2935525, at *3 (E.D.N.Y. Sept. 30, 2026). The First Department held that there is a private right of action, *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144 (1st Dep't 2019), but the Second Department rejected *Vega*'s reasoning and concluded that there is not, *Grant v. Glob. Aircraft Dispatch, Inc.*, 223 A.D.3d 712 (2nd Dep't 2024). "In such a posture, [federal] court[s] must 'undertake the imprecise but necessary task of predicting on a reasonable basis how the New York Court of Appeals would rule if squarely confronted with the issue.'" *Toxqui v. R&P Pizza Corp.*, No. 24-CV-03339 (LJL), 2025 WL 2430569, at *11 (S.D.N.Y. Aug. 22, 2025). As explained in the text above, the vast majority of federal courts to have addressed the issue—even in this District—have predicated that the Court of Appeals would likely side with the First Department that there is a private right of action.

privately actionable"). Indeed, some courts have noted that the statutory regime was recently amended to dispel this ambiguity and provide a private cause of action. *Cruz v. PJR Drywall Constr. Inc.*, No. 24-CV-8567 (RPK)(MMH), 2026 WL 663716, at *11 (E.D.N.Y. Mar. 9, 2026). Defendants' argument therefore fails, and the Amended Complaint plausibly states a claim under the NYLL and therefore it is recommended that the third cause of action should not be dismissed.

As for the FLSA claim, "[a]lthough the FLSA does not explicitly require that wages be paid on time, the courts have long interpreted the statute to include a prompt payment requirement." *Rogers v. City of Troy, N.Y.*, 148 F.3d 52, 55 (2d Cir. 1998). As one court in this District recently explained, determining "prompt" payment involves a "comprehensive inquiry" into "all objective factors" as to "whether a worker was paid on time." *Strain v. Sw. Airlines Co.*, No. 24-CV-08885-SJB-ST, 2025 WL 1384156, at *3 (E.D.N.Y. May 13, 2025) (Bulsara, J.). A finding that the defendant violated NYLL § 191 is relevant, but not dispositive—the defendant can still "invoke business reasons and other facts in response to justify why its wage payments were nonetheless prompt under FLSA." *Id.* Here, Defendants should have paid Plaintiff twice a month under NYLL § 191(d) as established above, yet as alleged, they went "several weeks" without paying her. (ECF No. 35 at 4.) While the Amended Complaint does not specify when Defendants resumed payment to Plaintiff, it says that they stopped in or around December 30, 2025 and implies that they still had not paid as of January 22, 2026. (*See* ECF No. 31, ¶¶ 40–42.) That means they were at least a week late. In analogous circumstances, courts have found a delay of one week to be untimely. *Cooke v. Frank Brunckhorst Co., LLC*, 734 F. Supp. 3d 206, 215–16 (E.D.N.Y. 2024) (Marutollo, M.J.) (finding bi-weekly payment to an employee who by law should have been paid weekly to be lacking promptness). Accordingly,

since the NYLL's frequency-of-pay requirements impact "promptness" under the FLSA, Plaintiff's claim under the FLSA should not be dismissed on the pleadings at this stage.

## II. Fourth Claim for Relief: New York Wage Theft Prevention Act

Plaintiff's fourth claim for relief asserts violations of NYLL § 195, "Notice and record-keeping requirements," which was adopted as part of the New York Wage Theft Prevention Act. (ECF No 31, ¶¶ 89–93.) Subsection (1)(a) of this statute requires an employer to provide to employees, "at the time of hiring," a notice containing certain information such as the employee's rate of pay and allowances and the employer's official name and address. NYLL § 195(1)(a). Plaintiff alleges that Defendants "failed to provide her with written notice of h[er] wage rate," violating this requirement. (ECF No. 31, ¶ 65.)

Defendants argue that this claim must be dismissed for lack of standing under the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). (ECF No. 34 at 7–9.) Defendants are correct. Faced with this exact question, the Second Circuit squarely held that technical violations of NYLL § 195, without more, do not constitute injury in fact:

> [A] plaintiff must show some causal connection between the lack of accurate notices and the downstream harm. . . . A plaintiff-employee *may* have suffered an injury-in-fact sufficient to establish standing when, for example, inaccurate or noncompliant notices prevented the employee from obtaining full payment of wages in a timely fashion. But the plaintiff-employee cannot assume this conclusion without analysis or rely on speculation and conjecture. Rather, the plaintiff-employee must support a plausible theory as to *how* he was injured by the defendants' failure to provide the required documents.

*Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 308–09 (2d Cir. 2024) (emphasis in original; internal citations and quotation marks omitted); *see also Heras v. Metro. Learning Inst., Inc.*, No. 19-CV-02694 (DG) (PK), 2025 WL 1166978, at *13 (E.D.N.Y. Feb. 28, 2025) (Gujarati, J.), *aff'd*, No. 25-1048-CV, 2026 WL 1378813 (2d Cir. May 18, 2026); *accord Sevilla v. House of Salads One LLC*, No. 20CV6072PKCCLP, 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022).

In response, Plaintiff avers that Defendants' late, retroactive payments after the span of non-payment during January 2024 in fact did cause her real harm. (ECF No. 35 at 9.) By not telling her "which periods each retroactive payment was made for, as well as the hours, days, and rates of pay by which each retroactive payment was calculated[,]" Defendants were able to "hide their acts[] and avoid liability for untimely payment of wages." (ECF No. 35 at 9.) "Furthermore, Plaintiff alleges she expended time and money for care of her son, missing work, and caretaking services in order to continue working for Defendants as a result of Defendants' untimely payments." (*Id.*)

There are multiple problems with these arguments. First and foremost, Plaintiff is arguing for a claim that she fails to plead. The Amended Complaint's Fourth Claim for Relief is for Defendants' alleged failure to provide wage notices upon Plaintiff's *hire*, back in 2022, in violation of NYLL § 195(1)(a). Plaintiff does not even try to explain how this harmed her. Accordingly, the Fourth Claim for Relief should be dismissed.

What Plaintiff appears to be arguing in her opposition brief is that Defendants violated a *different* provision of the "Notice and record-keeping requirements" statute, namely that employers must provide a statement "with every payment of wages" listing, among other things, the "the dates of work covered by that payment[.]" NYLL § 195(3). The Amended Complaint does not contain a single allegation regarding wage statements, besides for boilerplate in the preliminary statement listing Defendants' "failure to furnish wage statements/pay stubs" among eight other categories of damages. Nowhere does the Amended Complaint say that when Defendants made their belated back-payment sometime at the end of/after January 2024, they withheld information regarding such payment (*e.g.*, which specific pay periods the retroactive

paycheck covered).[4] As for the point about her son, that, too, contradicts the Amended Complaint. The Amended Complaint does not say Plaintiff had to expend time and money to care for her son as a result of Defendants' untimely payments or failure to provide wage statements. It says she had to expend time and money to care for her son as a result of Defendants' retaliatory removal of her son from pre-school. That is a different claim, addressed below.

In theory, the Court could grant Plaintiff leave to amend the complaint—again—to add factual allegations and a claim regarding wage statements. But there would be no point. Even if such a claim were added, it is likely subject to dismissal for the same reason as the previous one: lack of standing. Plaintiff's assertion that Defendants' opacity enabled them to "hide their acts" is precisely the kind of conclusory, speculative harm that courts reject. *See, e.g.*, *Heras*, 2025 WL 1166978, at *13 ("Although Plaintiff testified that if Defendants had provided her with the required wage notice she would have known that Defendants had to pay her overtime, she provided no evidence establishing that she would have undertaken advocacy or would have avoided some actual harm or obtained some actual benefit if an accurate notice had been provided."); *Sevilla*, 2022 WL 954740, at *7 ("Technical statutory violations that do not lead to either a tangible injury or something akin to a traditional cause of action cannot sustain Article III standing in federal court. Accordingly, the Court does not have subject matter jurisdiction

[4] During oral argument, Plaintiff's counsel conceded that the Complaint does not plead any allegations pertaining to § 195(3) but suggested that Plaintiff had "meant" to include such allegations. But the Court is bound by what the Complaint actually says, not by what Plaintiff hoped to say. "A party may not survive a motion to dismiss by pointing to other claims . . . that are not pleaded in the operative complaint but are raised only in the party's briefing or at oral argument." *(RC) 2 Pharma Connect, LLC v. Mission Pharmacal Co.*, No. 21-CV-11096 (LJL), 2022 WL 2441046, at *8 n.4 (S.D.N.Y. July 5, 2022) (collecting cases).

over Plaintiffs' claims for violations of NYLL § 195(1)(a) *and § 195(3)*.") (emphasis added; internal citations and quotation marks omitted).[5]

Accordingly, Plaintiff's Fourth Claim for Relief should be dismissed with prejudice.[6]

## III. **Fifth Claim for Relief: Failure to Maintain Records Under NYLL**

Plaintiff's Fifth Claim for Relief alleges violations of NYLL §§ 195(4) and 661. Subsection (4) of the "Notice and record-keeping requirements" statute requires employers to establish payroll records and preserve them for six years. NYLL § 195(4). Section 661 is substantially identical. NYLL § 661; *see also Jemine v. Dennis*, 901 F. Supp. 2d 365, 375 (E.D.N.Y. 2012) ("The Labor Law also requires that employers establish and maintain complete and accurate records for their employees who fall under the Labor Law's wage protections.") (citing NYLL §§ 195, 661). Plaintiff alleges that Defendants violated this requirement because they "failed to maintain true and accurate payroll records for Plaintiff for the applicable statutory period." (ECF No. 31, ¶ 97.)

This claim fails, however, because "[t]here is no independent cause of action for violations of the New York Labor Law's recordkeeping provisions." *Leo v. Province Therapeutics, LLC*, No. 2:23-CV-5418 (NJC) (JMW), 2024 WL 456824, at *9 (E.D.N.Y. Feb. 6, 2024) (quoting *Hernandez v. Staten Island Univ. Hosp./Northwell Health*, No. 22-CV-3572-RPK-JRC, 2023 WL 7000876, at *4 (E.D.N.Y. Aug. 18, 2023) (collecting cases)).

---

[5] Although the court in *Abe* concluded that violations of § 195(1)(a) and § 195(3) do give rise to standing, *see* 2024 WL 3875779, at *8–10, that decision was issued before the Second Circuit issued *Guthrie*.

[6] During oral argument, Plaintiff's counsel requested leave to amend. When asked what such an amendment might look like, counsel averred that Plaintiff would add allegations that she was unable to determine her payday or calculate how much she was owed. This tepid response confirms that amendment would be futile. As the Court noted during the argument—and to which counsel had no response—Plaintiff does not and cannot allege any *actual* harm, such as, for example, being denied a mortgage or other financing opportunity due to her inability to prove income.

In response, Plaintiff cites *Gonzalez v. Allied Concrete Indus., Inc.*, which seems to suggest that the recordkeeping provisions of NYLL do provide a private cause of action. 575 F. Supp. 3d 336, 340–41 (E.D.N.Y. 2021). But the actual holding of *Gonzalez* was about wage notice and wage statement provisions of § 195, not the recordkeeping provision; in other words, it was about § 195(1) and § 195(3), not § 195(4). *See id.* at 343 ("Plaintiffs seek an award of partial summary judgment . . . under NYLL § 195(1) and . . . NYLL § 195(3)[.]"). To the extent *Gonzalez* could be read to imply a private right of action under § 195(4), that was dicta.

During oral argument, Plaintiff's counsel conceded that § 195(4) does not confer a private cause of action but maintained that § 661 does. But even as to § 661, courts have consistently concluded there is no private cause of action. *See Jenkins v. Yellowstone Props., Inc.*, No. 17-CV-7764 (VEC), 2019 WL 4392955, at *4 (S.D.N.Y. Sept. 12, 2019); *Chan v. Big Geyser, Inc.*, No. 1:17-CV-06473 (ALC), 2018 WL 4168967, at *10 (S.D.N.Y. Aug. 30, 2018); *Sukhu v. R.A.I.N. Home Attendant Servs., Inc.*, 140 N.Y.S.3d 205, 206–07 (1st Dep't 2021).

Regardless, even if §§ 195(4) or 661 did confer a private right of action, it would not survive the Second Circuit's decision in *Guthrie*, which applied *TransUnion* in the NYLL context. *See* 113 F.4th at 308. For the same reason violations of § 195(1) and § 195(3) do not establish standing—that is, because they do not constitute injury in fact—violations of §§ 195(4) and 661 should not either.

Accordingly, Plaintiff's Fifth Claim for Relief should be dismissed with prejudice.

## IV. <u>Sixth Claim for Relief: Retaliation</u>

"Pursuant to Section 215(a)(3) of the FLSA, it is unlawful for any employer 'to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this

chapter.'" *Rosenbaum v. Meir*, 658 F. Supp. 3d 140, 149 (E.D.N.Y. 2023) (quoting 29 U.S.C. § 215(a)(3)). Likewise, the NYLL "makes it unlawful for an employer to 'discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee ... because such employee has made a complaint ... that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates [the NYLL]." *Id.* (quoting NYLL § 215(a)(1)) (alterations in original). Because the NYLL's anti-retaliation provision is "substantially similar" to that of the FLSA, "'courts analyze both statutes under the same standards for the purposes of a motion to dismiss.'" *David Jean-Louis v. BlueTriton Brands, Inc.*, No. 24-CV-5960 (DG) (TAM), 2026 WL 388648, at *8 (E.D.N.Y. Jan. 16, 2026) (quoting *Pullman v. Collins*, No. 24-CV-1383 (KMK), 2025 WL 2673807, at *12 (S.D.N.Y. Sept. 18, 2025)).

To adequately plead retaliation under the FLSA and NYLL, a plaintiff must allege three elements: "'(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action.'" *Abe v. Yamaguchi & Friends, Inc.*, No. 22-CV-3164 (NRM), 2024 WL 3875779, at *11 (E.D.N.Y. Aug. 20, 2024) (quoting *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010)).[7]

---

[7] This formulation tracks step one of the three-step burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "At the pleading stage, the Court does not specifically apply the *McDonnell Douglas* burden-shifting test to determine whether the plaintiff has stated a retaliation claim, but rather generally assesses the plausibility of the plaintiff's claim based on the facts alleged in the Complaint." *Han v. Shang Noodle House, Inc.*, No. 20CV2266PKCVMS, 2022 WL 4134223, at *7 (E.D.N.Y. Sept. 12, 2022) (internal citation omitted). "'[B]ecause a temporary presumption of discriminatory motivation is created under the first prong of the *McDonnell Douglas* analysis, a plaintiff need only give plausible support to a minimal inference of discriminatory motivation'" to defeat a motion to dismiss. *Green v. Brown*, No. 23-CV-8532 (NJC) (ST), 2025 WL 1310852, at *10 (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)), *report and recommendation adopted*, No. 2:23-CV-8532 (NJC) (ST), 2025 WL 1309825 (E.D.N.Y. Mar. 26, 2025). Hence, for present purposes "the Court need only address the first stage of the *McDonnell Douglas* framework." *Pullman*, 2025 WL 2673807, at *12 n.9 (internal citations omitted).

Here, the Amended Complaint alleges three potential acts of retaliation. On the same day Plaintiff inquired about her paycheck, her son was removed from Defendants' preschool. (ECF No. 31, ¶ 43.) At some point thereafter, Defendants demoted Plaintiff from "part-time" to "per-diem" employment status, causing her to lose certain benefits. (*Id.*, ¶¶ 50–52.) And while Defendants gave every other employee a bonus check in August 2025, they initially refused to give one to Plaintiff, relenting in September 2025 only after she filed a complaint. (*Id.*, ¶¶ 5–57.)

The first alleged act of retaliation is on the borderline as to first element, "protected activity." "'Protected activity' includes internal written or oral complaints made to employers so long as the employer is sufficiently on notice that the employee is asserting statutory rights under the FLSA. Similarly, an informal complaint to an employer that the employer is violating a provision of the NYLL suffices." *Weller v. Icahn Sch. of Med. at Mount Sinai*, No. 23-CV-4775 (PKC) (LB), 2025 WL 745992, at *12 n.8 (E.D.N.Y. Mar. 7, 2025). Here, Plaintiff alleges that her son was removed from pre-school after she complained about not being paid. (ECF No. 31, ¶ 42–43.) But although Plaintiff alleges that she complained to her employers, she does not allege that she specifically warned them they could be violating FLSA or NYLL. Absent such detail, an argument could be made that the Amended Complaint fails to allege protected activity. *Cf. Weller*, 2025 WL 745992, at *12 n.8 (finding protected activity sufficiently pled where the plaintiff sent emails to his employer "specifically naming alleged violations of the FLSA and NYLL"); *Grant v. Abbott House*, No. 14-CV-8703 (NSR), 2016 WL 796864, at *9 (S.D.N.Y. Feb. 22, 2016) (dismissing New York State Executive Law retaliation claim, because plaintiff failed to plead that she complained about "statutorily prohibited" behavior).

On balance, however, the Court concludes that Plaintiff's allegations of protected activity are sufficient to survive a motion to dismiss. In *Green v. Brown*, the court emphasized that "the

standard with respect to the first element of the *prima facie* case at the pleading stage is a 'low bar.'" No. 23-CV-8532 (NJC) (ST), 2025 WL 1310852, at *10 (E.D.N.Y. Mar. 11, 2025) (internal citation omitted), *report and recommendation adopted*, No. 2:23-CV-8532 (NJC) (ST), 2025 WL 1309825 (E.D.N.Y. Mar. 26, 2025). There, the plaintiff "complained that her wages were insufficient to allow her to support herself and her family[,]" and was shortly thereafter fired. *Id.* at *2. In moving to dismiss the plaintiff's retaliation claim, the employer argued that the plaintiff's generalized gripes about inadequate pay could not reasonably have been understood as "assert[ing] a violation of her rights under applicable labor laws." *Id.* at *10. The court rejected that argument, because "for purposes of a retaliation claim under the FLSA and the NYLL, 'an employee need not state his complaints with lawyerly precision.'" *Id.* at *11 (quoting *Cortese v. Skanska Koch, Inc.*, 544 F. Supp. 3d 456, 471 (S.D.N.Y. 2021)). The court therefore held that the plaintiff had pleaded the first element of the *prima facie* case—engagement in protected activity—with sufficient specificity. *Id.* at *11–12.

Following the logic of *Green*, the Court concludes that Plaintiff adequately pleads engagement in protected activity. By pressing her employer about her missed paycheck, she was plainly asserting an enforceable legal right. The fact that she did not reference the "FLSA" or "NYLL" by name is of no moment.

As for the second element, Defendants assert in conclusory fashion that "it is unlikely that [Plaintiff's] son's removal [from pre-school] would amount to an adverse action under the FLSA or NYLL[.]" (ECF No. 34 at 10.) Defense counsel reiterated this position at oral argument. But Defendants cite neither case law nor logic to support this position. "The Second Circuit has established that employer conduct constitutes adverse action if it 'well might have dissuaded a reasonable worker from making or supporting similar charges.'" *Scalia v. Sarene*

*Servs., Inc.*, 740 F. Supp. 3d 251, 293 (E.D.N.Y. 2024) (quoting *Mullins*, 626 F.3d at 53). "Courts have routinely held that this definition encompasses a broad range of retaliatory acts, including those not traditionally implicated in an employer-employee relationship." *Alvarado v. GC Dealer Servs. Inc.*, 511 F. Supp. 3d 321, 359 (E.D.N.Y. 2021) (internal citation omitted). Having one's child removed from pre-school is an immensely disruptive prospect. A reasonable person would tread lightly around their employer if the employer held sway over their child's ability to attend school. Accordingly, Plaintiff adequately pleads adverse action.

Finally, there is no question causation is met, as Plaintiff's child was removed from school the very same day she made the complaint. (ECF No. 31, ¶ 43.) The Court therefore finds that the Amended Complaint states a claim as to the first alleged act of retaliation.

As to the second and third alleged acts of retaliation (Plaintiff's demotion and the withholding of her bonus), however, the Amended Complaint fails on the third element, causation. "Causation in a retaliation claim can be shown either directly or through circumstantial evidence, usually when the adverse action followed soon after the protected activity." *Wilson v. New York & Presbyterian Hosp.*, No. 21-1971-CV, 2022 WL 17587564, at *2 (2d Cir. Dec. 13, 2022). The Amended Complaint does not say when Plaintiff was demoted. It could have been months or even more than a year since she filed the action on January 25, 2024. *Cf. id.* (noting that a gap of "more than a few months" is too long to infer retaliation). With respect to bonus, the Court need not guess, as the Amended Complaint says this happened in August 2025—a year and a half after Plaintiff brought suit. Nor, in the absence of temporal proximity, does the Amended Complaint contain any other facts circumstantially suggesting that the demotion or denial of bonus were somehow tied to Plaintiff's protected activity.

Still, because the Amended Complaint states a claim of retaliation as to the first alleged incident, the Sixth Claim for Relief should not be dismissed.

## CONCLUSION

The undersigned respectfully recommends that the District Judge grant the motion to dismiss filed at ECF No. 36 with prejudice as to the fourth and fifth claims and deny the motion as to the third and sixth claims.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served through ECF on all counsel. Any written objections to this Report and Recommendation must be filed within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. 2011); Fed. R. Civ. P. 6(a), 72(b); *see also Nambiar v. The Central Orthopedic Group LLP*, No. 24-1103 (2d Cir. Oct. 28, 2025) (addressing timing and scope of objections to Reports and Recommendations). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days precludes further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("In general, failure to object timely to a magistrate's report operates as a waiver of any further

judicial review of the magistrate's decision.") (internal citation omitted); *see also Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (summary order) (same).

Dated: Central Islip, New York
October 21, 2026

**RESPECTFULLY RECOMMENDED,**

/s/ James M. Wicks
JAMES M. WICKS
United States Magistrate Judge